UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
STEPHEN J. TOPALIAN,                                    Civ. Act. No.: 10-cv-1965 (KAM) (VVP)

                         Plaintiff,

          -against-                                     DOCUMENT
                                                        ELECTRONICALLY FILED
HARTFORD LIFE INSURANCE COMPANY,

                         Defendant.
-------------------------------------------------------------X


**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**


                              SEDGWICK LLP
                              Attorneys for Defendant
                              Hartford Life Insurance Company
                              125 Broad Street, 39th Floor
                              New York, New York 10004-2400
                              Telephone: (212) 422-0202
                              Facsimile: (212) 422-0925
                              [Sedgwick File No. 02489-000075]


*Of Counsel*
     Michael H. Bernstein
     John T. Seybert
     Daniel M. Meier


NY/850291v2

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................... 1

    POINT I:

    THE COURT MUST REVIEW THIS MATTER UNDER THE
    ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW .................................... 1

        A.    The Plan Vests Discretionary Authority In Hartford ...................................... 1

        B.    Topalian's Argument For *De Novo* Review Based On
            Procedural Irregularities Is Meritless ........................................................... 2

    POINT II:

    HARTFORD'S ADVERSE BENEFIT DETERMINATION WAS
    BASED ON SUBSTANTIAL EVIDENCE IN THE ADMINISTRATIVE
    RECORD ..................................................................................................................... 4

    POINT III:

    HARTFORD PROVIDED TOPALIAN WITH A FULL AND FAIR
    REVIEW ..................................................................................................................... 6

    POINT IV:

    HARTFORD'S DETERMINATION WAS NOT INFLUENCED BY
    CONFLICT OF INTEREST ........................................................................................ 13

    POINT V:

    TOPALIAN'S BELATED REQUEST TO SUBMIT THE CARTER
    AFFIDAVIT SHOULD BE REJECTED ...................................................................... 14

CONCLUSION ................................................................................................................. 15

i

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### Cases

*Abatie* v. *Alta Health & Life Ins. Co.,*
    458 F.3d 955 (9th Cir. 2006) ..................................................................................................... 15

*Black & Decker Disability Plan* v. *Nord,*
    538 U.S. 822 (2003) .................................................................................................................. 11

*Black* v. *Pitney Bowes Inc.,*
    No. 05 Civ. 108(GEL), 2008 WL 3992306, (S.D.N.Y. Aug. 26, 2008) ....................................... 8

*Chan* v. *Hartford Life Ins. Co.,*
    02 Civ. 2943(LMM), 2004 WL 2002988 (S.D.N.Y. 2004) ......................................................... 10

*Daniel* v. *Unumprovident Corp.,*
    No. cv-04-1073(SJF), 2006 WL 5692739 (E.D.N.Y. Mar. 13, 2006) ........................................... 3

*Demirovic* v. *Building Service 32 B-J Pension Fund,*
    467 F.3d 208 (2d Cir. 2006) ........................................................................................................ 3

*Durakovic* v. *Building Service 32 BJ Pension Fund,*
    609 F.3d 133 (2d Cir. 2010) ..................................................................................................... 14

*Faulkner* v. *Hartford Life and Acc. Ins. Co.,*
    No. CIV. S–11–0408, 2012 WL 913632 (E.D. Cal. Mar. 16, 2012) ........................................... 11

*Hobson* v. *Metropolitan Ins. Co.,*
    574 F.3d 75 (2d Cir. 2009), ........................................................................................ 10, 11, 13, 14

*Krauss* v. *Oxford Health Plans, Inc.,*
    517 F.3d 614 (2d Cir. 2008) .................................................................................................... 1, 2

*Kurth* v. *Hartford Life and Acc. Ins. Co.,*
    No. 2:10–cv–01229, 2012 WL 651684 (C.D. Cal. Feb. 27, 2012) ............................... 10, 13, 14, 15

*Lalli* v. *Hartford Ins.* Co.,
    No. 1:10–cv–00152, 2012 WL 602740 (C.D. Utah Feb. 23, 2012) ............................................ 11

*Martucci* v. *Hartford,*
    No. 10Civ.6231(BSJ)(RLE), 2012 WL 1034815 (S.D.N.Y. Mar. 27, 2012) ................................. 2

*Metzger* v. *Unum Life Ins. Co. of Am.,*
    476 F.3d 1161 (10th Cir. 2007) ................................................................................................... 8

*Nichols* v. *Prudential Ins. Co. of America,*
    406 F.3d 98 (2d Cir. 2005) .......................................................................................................... 3

*Rizzi* v. *Hartford Life and Accident Ins. Co.*,
   613 F. Supp. 2d 1234 (D.N.M. 2009),
   *aff'd*, 383 Fed. Appx. 738 (10th Cir. 2010)................................................................ 14

*Rotondi* v. *Hartford Life and Accident Group*,
   No. 09 Civ. 6287(PGG), 2010 WL 3720830 (S.D.N.Y. Sept. 22, 2010) ...................... 12

*Rund* v. *JPMorgan Chase Group Long Term Disability Plan*,
   10 Civ. 5284, 2012 WL 1108077 (S.D.N.Y. Mar. 30, 2012) .................................2, 14

*Solomon* v. *Metropolitan Life Ins. Co.*,
   628 F. Supp. 2d 519 (S.D.N.Y. 2009) ....................................................................... 8

**Statutes**

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq.* ............................... 2

**Rules**

29 C.F.R. §2560.503-1 .......................................................................................................... 2

NY/850291v2

## PRELIMINARY STATEMENT

Defendant Hartford Life Insurance Company ("Hartford") submits this Memorandum of Law in reply to Plaintiff Stephen J. Topalian's ("Topalian") opposition and in further support of its motion for summary judgment dismissing Topalian's Complaint (the "Complaint").  For the reasons discussed below, this Court should grant summary judgment dismissing Topalian's Complaint.

## ARGUMENT
## POINT I
## THE COURT MUST REVIEW THIS MATTER UNDER THE
## ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW

**A.      The Plan Vests Discretionary Authority In Hartford**

The group insurance policy ("Policy") between Hartford and Topalian's employer, Allstate Insurance Company ("Allstate"), states that Hartford has "full discretion and authority to determine eligibility and to construe and interpret all terms and provisions of the [Policy]." (14).[1]  The Policy is the controlling agreement between Allstate and Hartford.  (01).  This is all that is required to demonstrate a grant of discretionary authority.  (*See* Hartford's Memorandum of Law In Opposition To Topalian's Motion For Summary Judgment, dated March 28, 2012 ("Def. Opp."), p.10).[2]  Indeed, in *Krauss* v. *Oxford Health Plans, Inc.,* 517 F.3d 614, 622-23 (2d Cir. 2008), the Second Circuit ruled that a Certificate of Coverage evidencing the agreement between the insurer and the employer was sufficient proof that the plan vested discretionary authority in the insurer/claim administrator.

In opposition, Topalian argues that the full grant of discretionary authority in the Policy is not sufficient to vest Hartford with discretionary authority because there may be other plan documents relevant to this issue.  (Topalian's Memorandum of Law in Opposition dated March 28, 2012 ("Plt. Opp."), p. 12).  But Topalian has not identified any other plan documents that he contends raise any issue on this point.  Topalian's

---

[1] The numbers in parentheses refer to the Bates Stamped pages starting with the prefix "TOPALIAN 000__," which are annexed to the Declaration of Genie M. Guthrie dated February 22, 2012 ("Guthrie Dec."), as Exhibits "A" through "B."

[2] References to Def. Opp. are meant to direct the Court's attention to arguments that appear in the relevant pages of this prior submission and those arguments are incorporated by reference herein.

argument is also contrary to the controlling holdings in *Krauss*, *supra*, and the nine cited cases in Hartford's Opposition, which all found the materially same policy language as appears in the Policy here to be sufficient to vest Hartford with discretionary authority. (Def. Opp., p. 10); see also *Martucci* v. *Hartford*, No. 10Civ.6231(BSJ)(RLE), 2012 WL 1034815, at *4 (S.D.N.Y. Mar. 27, 2012); *Rund* v. *JPMorgan Chase Group Long Term Disability Plan*, 10 Civ. 5284, 2012 WL 1108077, *12 (S.D.N.Y. Mar. 30, 2012).

Perhaps more importantly, Topalian waived this argument by failing to allege it in his Complaint or raise it prior to the filing of his motion for summary judgment. (Def. Opp., pp.6-7).

**B.    Topalian's Argument For *De Novo* Review Based On Procedural Irregularities Is Meritless**

Topalian also argues that the standard of review should be *de novo* because Hartford purportedly failed to issue its final determination within the time required by 29 C.F.R. §2560.503-1.  (Plt. Opp., pp. 9-11). Topalian's reckoning is incorrect because he fails to account for tolling of the time-period to decide the appeal. The period was tolled because Topalian admittedly did not provide all of the information he wanted Hartford to consider on his administrative appeal until August 3, 2009, when Hartford received Dr. Muhlrad's 2007 medical records.  29 C.F.R. §2560.503-1(i)(4).  While Topalian questions why Hartford waited for these records (Plt. Opp., pp. 4-5, 7, n.2), it was his counsel who claimed the records were relevant.  (1257).  The administrative record reflects that Hartford made a timely request for additional medical records from Topalian's treating physicians and advised Topalian of this request, which tolled the time for Hartford to make its determination until those records were received.  (Def. Opp., pp. 12-13).  The record also reflects that Hartford's Appeal Specialist Genie Guthrie communicated with Topalian's counsel, Michael Quiat, about the information she needed, advised Attorney Quiat that the time for deciding the appeal was tolled and also asked Attorney Quiat if she should proceed with her consideration of the appeal without the information.  Attorney Quiat did not respond to this inquiry.  (*Id*).

Topalian argues that the regulatory tolling provision promulgated under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq*,  "*only* applies when the claim fiduciary is

waiting for evidence *from the claimant*." (Plt. Opp., p. 10) (emphasis in original). First, this argument is a *non-sequitor* because Hartford did request this information from claimant's counsel by letter dated April 27, 2009. (1027) (requesting that Topalian provide an authorization for release of his medical records and his assistance in obtaining these records from his treating physicians). Second, Hartford's direct request to Topalian's treating physicians for medical records is the practical equivalent of making the request to Topalian. Hartford merely relieved Topalian of the burden and cost of obtaining and submitting them to Hartford. Accordingly, Topalian's argument that ERISA's tolling regulation is inapplicable is not supported by the administrative record.

Moreover, Hartford substantially complied with ERISA's regulations providing for a full and fair review. (Def. Opp., p. 16). The administrative record demonstrates that Hartford had extensive communications with Topalian's counsel regarding the timing of its determination. (Def. Opp., pp. 12-13). Indeed, Ms. Guthrie meticulously identified all the steps she had taken between April 27, 2009 and August 14, 2009 to obtain the additional information needed from Topalian to decide his appeal. (1136-40). Hartford's determination is therefore entitled to deference because it substantially complied with ERISA's timeliness requirements. *See Demirovic* v. *Building Service 32 B-J Pension Fund*, 467 F.3d 208, 212 (2d Cir. 2006).

Topalian cites *Nichols* v. *Prudential Ins. Co. of America*, 406 F.3d 98 (2d Cir. 2005) in support of his arguments. *Nichols*, however, is inapposite since the court in that case applied a *de novo* standard of review because the plan administrators failed to issue <u>any</u> final determination until after the plaintiff had actually commenced a lawsuit. Unlike in *Nichols*, Hartford timely issued its final determination letter prior to the commencement of this action. *See Demirovic*, 467 F.3d at 212; *Daniel* v. *Unumprovident Corp.*, No. cv-04-1073(SJF), 2006 WL 5692739 (E.D.N.Y. Mar. 13, 2006).

Accordingly, this Court's consideration of this matter should be done pursuant to the arbitrary and capricious review standard.

NY/850291v2

## POINT II
## HARTFORD'S ADVERSE BENEFIT DETERMINATION WAS BASED
## ON SUBSTANTIAL EVIDENCE IN THE ADMINISTRATIVE RECORD

Hartford denied Topalian's claim for continuing LTD benefits based on substantial evidence in the record, including: (i) Topalian's statements concerning his functional abilities (378, 973, 1012); (ii) office notes and treatment records from Topalian's treating physicians concerning Topalian's improvement following his bariatric surgery (378, 973, 1012, 1888-89); (iii) communications from several of Topalian's treating physicians stating that Topalian was capable of working in a sedentary or light occupation (47-49, 147-150); (iv) the lack of objective evidence demonstrating that Topalian was unable to perform the duties of a sedentary occupation; and (v) an Employability Analysis Report ("EAR"). (122-23).  On administrative appeal, Hartford relied on additional items of substantial evidence including: (vi) further medical records confirming Topalian's ability to perform a sedentary occupation (1429-30, 1562, 1609, 1632); and (vii) the reports and opinions of two independent medical record peer review physician consultants ("IPC"), following a co-morbid review of all of Topalian's medical records that considered all of Topalian's allegedly disabling conditions, both individually and cumulatively.  These two IPCs were Board Certified in Internal Medicine and in Occupational Medicine, respectively, and both concluded that Topalian was physically able to return to work at a sedentary occupation. (1113-28).

Topalian's Opposition presents a revisionist history of his claim and identifies complaints and conditions as purportedly disabling that he never claimed were disabling at the time he pursued his administrative appeal.[3]  Regardless of the impropriety of Topalian raising these points for the first time in litigation, none of them undermine the substantial evidence that Hartford relied on in reaching its final adverse determination.  (Def. Opp., pp. 16-18).  For example, Topalian argues in opposition that he suffered from a disabling knee condition, central spinal stenosis, chronic pain and congestive heart failure.  (Plt. Opp., pp. 2, 4).  Notably, when Attorney Quiat wrote to Topalian's treating physicians to request that they retract their previous

---

[3] Topalian was represented by his current counsel throughout the administrative appeal.

opinions concerning his ability to perform sedentary work, he did not identify any of these conditions as a disabling condition. (1703-04). Also, Topalian's certification similarly does not identify these conditions as disabling, other than his vague reference to back and knee pain. (1804, 1806). Consistent with Topalian's silence on this issue on appeal, his treating physicians did not submit any medical records indicating that he was disabled by these conditions and none of his treating doctors stated that he was disabled by any of these conditions. Indeed, the documents Topalian references as support for his purportedly disabling knee condition demonstrate that he only had a tear or sprain with no evidence of instability. (320, 1233-35, 1355, 1383). With respect to his purportedly disabling congestive heart failure, the administrative record documents that this condition had resolved and he was clinically stable from a cardiac perspective as of at least May 23, 2007 — more than two years prior to the date Hartford rendered its final adverse determination on administrative appeal. (339). Topalian's belated attempts in this motion practice to conjure up new bases for his purported disability are a tacit concession that the originally stated basis for his claimed disability was no longer existent at the time Hartford terminated LTD benefits.

Topalian's unfounded criticisms of Hartford's consideration of the proof in his claim file similarly provide no basis for this Court to disturb Hartford's determination. For example, Topalian mischaracterizes the substantial evidence that Hartford relied on in making its determination, arguing that Hartford improperly relied upon only four pieces of evidence in the administrative record to reach its adverse benefit determination including "Yes/No checkbox response[s]" from three of Topalian's treating physicians and Topalian's loss of twenty-six (26) pounds. (Plt. Opp., p. 14). This is demonstrably false as the administrative record shows that Hartford considered all of the evidence in the record.[4] As explained in more detail above and in Hartford's Memorandum of Law in Support of Its Motion for Summary Judgment dated February 29, 2012 ("Def. MOL") pages 38 to 45, Def. Opp. pages 16 to 28, as well as in Hartford's September 1, 2009 appeal determination letter (1009-16), Hartford relied on considerably more than the three responses from Topalian's

---

[4] Manifestly, Topalian's representation that Hartford relied "exclusively" on the IPCs' opinions (Plt. Opp., p. 3) is also incorrect. (*See* pp.4-5, *supra*.).

treating physicians to reach its final claim determination.  While Topalian attempts to downplay the significance of his own treating physicians' original opinions concerning his functional ability to perform sedentary work by arguing that they "recanted" their opinions, none of these physicians ever provided any medically-based reason for changing their initial opinions.  Moreover, Topalian's treating physicians' original opinions were consistent with the clinical findings documented in their medical records.  (Def. Opp., pp. 21-24).

Topalian argues that Dr. Schiller followed up his retraction with a detailed explanation assessing Topalian's medical needs.  (Plt. Opp., p. 18).  But Dr. Schiller did not provide any clinical documentation in support of this assessment and specified no functional impairments other than difficulty walking, which he had previously stated had improved.  (1014; *compare* 390-391 *with* 702-705).  In contrast, the additional medical records Topalian submitted on administrative appeal and that Hartford obtained from his treating physicians demonstrated that he was able to perform the material and substantial duties of a sedentary occupation.  (Def. Opp., pp. 25-27).

Finally, Topalian argues that the IPCs' reports were inconsistent about whether Topalian had congestive heart failure.  (Plt. Opp., p. 4).  While the two reports may differ slightly about the existence of congestive heart failure, Topalian had not claimed that he was disabled by the condition prior to his briefing of the motion for summary judgment.  Moreover, his treating physicians have not identified any limitations based on congestive heart failure that would prevent him from performing sedentary work; indeed, they found him stable from a cardiac perspective.  (339).  (*See also* p. 6 *supra*).

Accordingly, Hartford's determination to terminate LTD benefits as of July 30, 2008 was reasonable and based on substantial evidence in the administrative record.

## POINT III
## HARTFORD PROVIDED TOPALIAN WITH A FULL AND FAIR REVIEW

In his opposition, Topalian argues that Hartford failed to obtain and consider records from the Social Security Administration ("SSA") regarding his Social Security Disability Income ("SSDI") application.  (Plt. Opp., pp. 20-21).  This argument is meritless.  Hartford properly discussed the SSDI award in its final

6

determination letter and explained why it did not affect Hartford's decision. (1011).  Topalian argues that it was Hartford's obligation to alert him to the need to obtain any further supporting documentation from the SSA and submit it in support of his claim.  (Plt. Opp., p. 20).  This is a complete misstatement of the law.  Topalian always had the ability and opportunity to submit whatever proof he believed would support his claim, including materials from the SSA.  He did not do so.  Hartford had no affirmative duty to obtain Topalian's records from the SSA, especially where Hartford had previously approved Topalian's LTD benefit claim at or about the same time his SSDI claim was approved.  Topalian, like any other claimant, bears the burden of submitting proof in support of his claim.  Hartford is not required to obtain proof to either prove or disprove his claim. (Def. Opp., p.32-35).

Topalian also argues that the IPCs who were retained by Reliable Review Services ("RRS") lacked the requisite experience "in the medical conditions implicated by Plaintiff's illness – orthopedics and bariatrics." (Plt. Opp., pp. 20-21).  Once again, this argument is belied by the factual record and inconsistent with controlling law on point.  First, the specific expertise identified by Topalian is not required and the qualifications of Dr. Green and Dr. Nudell demonstrate that they have sufficient expertise to provide reliable opinions.  (Def. Opp., p. 37).  Second, Topalian never identified any purportedly disabling bariatric or orthopedic condition in support of his claim or on his administrative appeal.  (Def. Opp., p. 37).  Notably, while Topalian argued in his own summary judgment motion papers that the IPCs did not have expertise in bariatrics, his opposition expands on that argument by claiming that an expertise in orthopedics was also necessary to evaluate Topalian's purported need for a "knee replacement."  (Plt. MOL, pp. 14-15).  The administrative record reflects that Topalian did not submit medical records indicating that he received a total knee replacement or that he could not work at a sedentary occupation due to his knee condition. (*See* POINT II, *supra*).  Nevertheless, because the IPCs were instructed to review all of Topalian's medical conditions (1003), both Drs. Nudell and Green noted that: (1) Topalian's degenerative disc disease and lumbar pain would not have prevented him from functioning in a full time sedentary position, as long as he could shift positions as

needed; and (2) his complaints of left knee derangement would limit his ability to walk, but that would not affect his ability to perform a sedentary position.  (1123, 1127).[5]  Topalian finds fault with Drs. Nudell and Green communicating (Plt. Opp., pp. 4, 14), but, as part of their co-morbid review, they were requested to have a discussion as to whether the cumulative effect of Topalian's conditions may create additional restrictions.[6]  (Def. Opp., pp. 28-31, 37).  Accordingly, Dr. Nudell and Dr. Green properly considered and evaluated Topalian's purported orthopedic conditions and concluded that they would not prevent him from performing a sedentary occupation.

Topalian incorrectly argues that he should have been given the opportunity to rebut the IPCs' conclusions before Hartford rendered its final appeal determination.  (Plt. Opp., pp. 21-22).  While Topalian cites to *Solomon* v. *Metropolitan Life Ins. Co.*, 628 F. Supp. 2d 519, 533 (S.D.N.Y. 2009) for this proposition, this case is not binding or precedential and is contrary to *Black* v. *Pitney Bowes Inc.*, No. 05 Civ. 108(GEL), 2008 WL 3992306, *11, n.7 (S.D.N.Y. Aug. 26, 2008) (Lynch, J.), in which the Court ruled that the claims administrator was not required to send IPC reports to the claimant for comment before rendering a final claim determination.  (Def. Opp., pp. 38-39).  In fact, the majority of Courts disagree with the holding in *Solomon*, including three Circuit Courts of Appeals.  (Def. Opp., p. 30).  In *Metzger* v. *Unum Life Ins. Co. of Am.*, 476 F.3d 1161, 1167 (10th Cir. 2007), the Tenth Circuit observed that the administrator need not give a claimant the opportunity to rebut the plan's evidence "[s]o long as appeal-level reports analyze evidence already known to the claimant and contain no new factual information or novel diagnoses."  Here, the IPC reports merely confirmed medical information already in the claim file, contained no new factual information, and did not generate "surprise" evidence of which Topalian was not aware.  (1113-28).  Accordingly, Topalian was not entitled to receive these reports prior to the date Hartford rendered its final determination on appeal.

---

[5] Topalian mischaracterizes Dr. Green's opinion (Plt. Opp., p. 18) to claim that he was unable to perform a sedentary occupation due to a functional impairment.  That was not Dr. Green's opinion.  (Def. Opp., pp. 39).

[6] The unsupported argument made in Topalian's moving brief that Hartford allegedly did not conduct a co-morbid analysis was abandoned in his opposition.  (Plt. MOL, pp. 35-37).

Topalian also baselessly argues that Hartford had an obligation to retain an IPC at the initial claim review level. (Plt. Opp., p12). There is no such requirement in the Plan or in ERISA. Moreover, as of July 30, 2008, Topalian's physicians stated that he was physically able to perform a sedentary or light duty occupation and therefore, the circumstances of Topalian's claim did not warrant such review.

Topalian argues that Hartford failed to address the side-effects of his medications. (Plt. Opp., pp. 22-23). Once again, this argument is demonstrably false. The administrative record reflects that IPC Dr. Green expressly addressed the potential side-effects of Topalian's medications in his report, noting that Topalian's treating physician, Dr. Schiller, had explained on April 24, 2009 that Topalian was not experiencing any problems with his medications. (1126, 1285). Similarly, Dr. Schiller's treatment notes that were attached to his January 10, 2008 APS reflect that Topalian had been tolerating his medications well. (391). Appeal Specialist Genie Guthrie noted Dr. Green's finding and further stated that the medical records from all of Topalian's treating physicians did not reflect any impairment as a result of medication side-effects. (1006). Furthermore, the administrative record reveals that Topalian failed to meet his burden of submitting any medical documentation to demonstrate that he was disabled due to the purported side-effects of his prescription medications. In fact, the administrative record demonstrates that the first time Topalian raised any issue concerning the side-effects of his prescription medications was in his March 2, 2009 letter administratively appealing Hartford's initial adverse benefit determination. (1690-1701). But contrary to those new claims, Topalian's treating physicians' office notes do not reflect that Topalian complained about side-effects from the prescription medications prior to his appeal, and Topalian does not identify any such evidence in the administrative record in any of his motion or opposition papers. (Plt. Opp., pp. 22-23). Despite the fact that Topalian submitted no proof to substantiate his claim of debilitating side-effects from his prescription medications,[7] and that he waited until his administrative appeal to even raise this claim, Hartford still considered it and explained why it was unavailing. (1006, 1126).

---

[7] Topalian merely cites a variety of *possible* side-effects of the several medications he claims to have been taking and baselessly argues that he suffered from all of them. (1718-1800).

Topalian further contends that Hartford did not provide him with a full and fair review because it did not obtain an independent medical examination ("IME") or a functional capacity evaluation ("FCE"). (Plt. Opp., pp. 23-25). This argument has been explicitly rejected by the Second Circuit. (Def. Opp., pp. 40-42). In *Hobson* v. *Metropolitan Ins. Co.*, 574 F.3d 75, 90-91 (2d Cir. 2009), the plaintiff similarly argued that the defendant claim administrator must obtain an IME, rather than utilize an IPC to assist in its evaluation of a claim, and that the failure to do so constitutes a lack of a full and fair review. Similar to Topalian, the plaintiff in *Hobson* cited *Chan* v. *Hartford Life Ins. Co.*, 02 Civ. 2943(LMM), 2004 WL 2002988 (S.D.N.Y. 2004) for the proposition that an in-person examination must be conducted. The Second Circuit flatly rejected this argument and distinguished *Chan. Hobson*, 574 F.3d at 91. (Def. Opp., p. 40).

Notwithstanding this controlling authority from the Second Circuit, Topalian also cites *Kurth* v. *Hartford Life and Acc. Ins. Co.*, No. 2:10–cv–01229, 2012 WL 651684, *6 (C.D. Cal. Feb. 27, 2012) as support for his argument that Hartford was required to conduct an IME. Not only is *Kurth* contrary to the Second Circuit's holding in *Hobson*, but the rationale in *Kurth* suggesting the need for an IME in that case is not even present in Topalian's case. In *Kurth*, the district court explained that an IME or FCE should have been conducted in light of the fact that the treating physician maintained that the claimant was permanently disabled both during the initial review and the appeal stage, and pointed to objective medical evidence to support his opinion. *Id.* at *8. Since the treating physician's opinion was purportedly consistent with the medical records in that case, the court held that an IME or FCE should have been conducted. *Id.* Here, Topalian's medical records reflect improvement in his medical conditions after his gastric banding surgery, and his treating physicians even stated as much during Hartford's review of his claim. (147, 149-50, 244, 390-91, 1345). It was only after Topalian's counsel undertook efforts to influence the treating physicians' opinions that they "retracted" them. This occurred almost a year after they had given these opinions and each of these physicians also failed at that time to reference any objective medical evidence to support their change in opinion, or even attempt to reconcile their new opinions with their contemporaneous medical notes. (*Compare* 1703-13 *with* 147-

48).

Topalian also argues that Hartford's actions in his case are comparable to those present in *Lalli* v. *Hartford Ins.* Co., No. 1:10–cv–00152, 2012 WL 602740 (C.D. Utah Feb. 23, 2012). (Plt. MOL, pp. 33-34). As explained in Def. Opp., *Lalli* is inapposite because the diagnoses in question in that case concerned very subjective symptoms and the administrator admitted that the medical records were inconclusive. (Def. Opp., pp. 40-41). The court in *Lalli* determined that because of these factors, the defendant had insufficient evidence upon which to conclude that the claimant was no longer disabled. Here, Topalian's medical records conclusively demonstrated that he was capable of performing a sedentary occupation and his treating physicians agreed with that conclusion at the initial review stage. (47-49, 147-50).

Topalian cites *Faulkner* v. *Hartford Life and Acc. Ins. Co.*, No. CIV. S–11–0408, 2012 WL 913632 (E.D. Cal. Mar. 16, 2012) to argue that Hartford improperly assessed evidence provided by the IPCs. (Plt. Opp., pp. 27-28). *Faulkner* is inapposite because all of the treating physicians in that case found the claimant to be disabled, and the IPC also found that the claimant could not work full time. *Id.*, at *13. Here, the treating physicians explicitly stated that Topalian could perform the essential duties of a sedentary position, and while some of them ultimately recanted their opinions, they never provided any medical evidence to support or explain this change in position. (1703-13). Moreover, Topalian's argument that Hartford was obliged to explain why it relied on the IPCs' opinions over those of the treating physicians is, once again, a misstatement of the governing law. (Plt. Opp., p. 28). *See Black & Decker Disability Plan* v. *Nord*, 538 U.S. 822, 832 (2003) (claims administrators have no duty of explanation when they credit opinions of IPCs over treating doctors); *see also Hobson*, 574 F.3d at 90. Similarly, Topalian argues that Hartford never contacted Dr. Schiller concerning his retraction of his original opinion. (Plt. Opp., p. 27). But Topalian does not identify any provision or requirement under ERISA that Hartford was required to speak with Dr. Schiller before rendering its final determination.

Ironically, Topalian argues that Hartford did not provide him with a full and fair review because it did

not perform surveillance on him.  (Plt. Opp., pp. 24-25).  (Most claimants object to such activities, finding it an "invasion of privacy").  This argument is entirely without merit and Topalian cites no authority to support his argument that Hartford was required to undertake surveillance in order to perform a full and fair review.  (Def. Opp., pp. 35-36).  Although Topalian tries to manufacture a circumstance in which Hartford might consider performing surveillance and chose not to do so, this argument is based on conjecture and surmise and remains untethered to any of the actual facts of this case.  Topalian's reference to the entry in the Summary Detail Report stating that on March 27, 2007, Topalian's "[c]laim proactively reviewed[8] by SIU but was not accepted for investigation at this time" (957; *see also* Plt. MOL, p. 18; Topalian's Statement of Undisputed Material Facts, dated March 28, 2012, ¶64) does not support his contentions.  It merely means that Hartford's SIU unit did not believe it needed to perform a fraud investigation.  ██████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████     Here, Topalian was open about his functional abilities and his statement of his abilities was consistent with his treating physicians' opinions and clinical record notes.  (1012, 1128).

Topalian's citation to case law concerning video surveillance in disability cases is also off point and not compelling.  While Hartford, at times, may decide that surveillance might be useful to confirm a claimant's level of function, none of the case law cited by Topalian stands for the proposition that Hartford must conduct surveillance in every case, particularly in cases like this where the claimant and his treating physicians were all in agreement about his level of functionality.  (Plt. Opp., p. 25).  Indeed, Topalian's citation to inapposite case law actually supports Hartford's position in this case.  In *Rotondi* v. *Hartford Life and Accident Group*, No. 09 Civ. 6287(PGG), 2010 WL 3720830 (S.D.N.Y. Sept. 22, 2010), cited to by Topalian, the Court held that the defendant was not required to perform surveillance in order to provide a full and fair review.  *Rotondi*, 2010 WL 3720830, at *11.

---

[8] A proactive review is not a review based on a referral from an Ability Analyst.

NY/850291v2

## POINT IV
## HARTFORD'S DETERMINATION WAS NOT
## INFLUENCED BY CONFLICT OF INTEREST

Topalian asserts that Hartford operated under an "inherent conflict of interest" due to its dual role as claims administrator and insurer.  (Plt. Opp., p. 30).  As explained in Def. Opp., in anticipation of this argument, Hartford submitted unrebutted proof in admissible form with its principal motion papers detailing the active steps it takes to promote accuracy and "wall off" financial departments from its claim and appeals decision-making departments.  (Def. MOL, pp. 45-49, Declaration of Bruce Luddy, dated February 23, 2012 ("Luddy Dec."), Declaration of Genie M. Guthrie, dated February 22, 2012, ¶¶5-9, Def. Opp., pp. 43-44).  Notwithstanding this proof, Topalian persists in making his unsubstantiated conflict arguments and instead of pointing to evidence in the administrative record that actually shows that conflict of interest considerations influenced Hartford's decision-making, he attempts to create the appearance of a conflict by making baseless allegations that Hartford has improper financial relationships with the vendors it used to obtain IPC reports.  Topalian's arguments are not probative of Hartford's purported financial conflict of interest.  (Def. Opp., pp. 44-47).  Moreover, these arguments are based entirely on case law from courts outside the Second Circuit.  (Plt. Opp., pp. 25-29).  Topalian's case citations are not binding and are actually contrary to controlling law in this Circuit. (Def. Opp., pp. 44-45).

Specifically, Topalian cites to *Kurth* v. *Hartford Life and Acc. Ins. Co.*, No. 2:10–cv–01229, 2012 WL 651684, *6 (C.D. Cal. Feb. 27, 2012) for the proposition that Hartford's relationship with its medical vendors is a source of financial conflict of interest, and the fact that the medical review vendors get paid is evidence of a financial conflict of interest absent any direct evidence.  But in *Hobson*, 574 F.3d at 90, the Second Circuit expressly rejected this argument, holding that an insurer "does not abuse its discretion by considering these trained physicians' opinions solely because they were selected, and presumably compensated, by [the insurer]."  Moreover, the Second Circuit has ruled that a plaintiff must demonstrate that a financial conflict of interest actually affected the insurer's decision-making for it to have any weight.  *Durakovic* v. *Building Service 32 BJ Pension*

13

*Fund*, 609 F.3d 133, 140 (2d Cir. 2010) (citing *Hobson*, 574 F.3d at 83).  Additionally, Topalian's reference to *dicta* in *Kurth* concerning Hartford's relationship with its vendors is insufficient to demonstrate that a financial conflict of interest actually affected Hartford's decision-making. RRS, the vendor through which Hartford blindly obtained the IPCs' reports in this case, had no influence over Hartford's determination of Topalian's benefits claim, and Topalian's *innuendo* and surmise suggesting otherwise is no substitute for a well-reasoned argument on this point.  Topalian was given volumes of discovery to satisfy his concerns about conflict of interest, none of which supports his conflict arguments. *See also Rizzi* v. *Hartford Life and Accident Ins. Co.*, 613 F. Supp. 2d 1234, 1248 (D.N.M. 2009), *aff'd*, 383 Fed. Appx. 738 (10th Cir. 2010).

In fact, numerous courts in this Circuit, and others, have found that the very steps that Hartford has taken in this case to promote accuracy in its decision-making and to reduce the influence of any financial conflict of interest result in the conflict of interest factor being reduced to the "vanishing point."  *See Rund*, 2012 WL 1108077, at *16.  (*See* Def. Opp., p. 43 (listing cases)).

## POINT V
## TOPALIAN'S BELATED REQUEST TO SUBMIT
## THE CARTER AFFIDAVIT SHOULD BE REJECTED

Topalian improperly submits an Affidavit (the "Carter Affidavit") that Sandra Carter (whom he alleges is a former Hartford employee) purportedly submitted in another lawsuit in another jurisdiction, to cast doubt on the accuracy of the Luddy Dec., that was submitted to the Court in this action.  This Court should reject Topalian's submission of the Carter Affidavit because he never identified Ms. Carter as a potential witness or disclosed her Affidavit during discovery.  Moreover, the Carter Affidavit is not authenticated and purports to be from an employee who had absolutely nothing to do with Hartford's adjudication of Topalian's claim.[9] The only proof concerning conflict of interest that is admissible in this case is from Bruce Luddy and Genie Guthrie, who were properly identified and disclosed in discovery.  (*See* Declaration of Michael H. Bernstein,

---

[9] Ms. Carter claims to have worked in Hartford's disability claims department from 2004 through 2006. At that point in time, Topalian's claim for LTD benefits had been approved and Hartford was paying benefits.  Ms. Carter did not work in the claims department at the time Topalian's claim was terminated in July 2008.  *See* Affidavit of Michael E. Quiat, dated March 28, 2012, Ex. "A."

dated April 11, 2012, Ex. "A").  In fact, Topalian deposed Ms. Guthrie in this case, although he notably did not use any of her deposition transcript in support of his conflict of interest arguments.

Further, Topalian's reference to *Kurth* to demonstrate Hartford's purported conflict of interest in his case is meritless and absurd.  (Plt. Opp., p. 30).  While *Kurth* cited to Luddy's testimony that Hartford's claim reviewers have no contact with the financial department, it ultimately found that a degree of "skepticism" (a standard that applies only in the 9th Circuit, *see Abatie* v. *Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006)) would be appropriate in that case because of an unidentified monetary amount written in the margins of a document in the administrative record of that case.  *Kurth*, 2012 WL 651684, at *7.  Accordingly, the court in *Kurth* did not criticize Luddy, and Topalian has once again attempted, improperly, to create an inference of conflict where none exists.

## **CONCLUSION**

For the foregoing reasons and those set forth in Hartford's initial Memorandum of Law in support of this motion, as well as the reasons set forth in Hartford's opposition to Topalian's motion for summary judgment, this Court should grant Hartford's motion for summary judgment, dismissing Topalian's Complaint.

Dated:  New York, New York
          April 11, 2012

                                        Respectfully Submitted,

                                         *s/ Michael H. Bernstein*
                                        Michael H. Bernstein (MB 0579)
                                        John T. Seybert (JS 5014)
                                        Daniel M. Meier (DM 2833)
                                        SEDGWICK LLP
                                        Attorneys for Defendant
                                        *Hartford Life Insurance Company*

15

<u>**CERTIFICATE OF SERVICE**</u>

I, DANIEL M. MEIER, hereby certify and affirm that a true and correct copy of the attached

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION**

**FOR SUMMARY JUDGMENT** was served via E-mail and regular mail on this 11th day of April, 2012, upon the

following:

> Michael E. Quiat Esq.
> Uscher, Quiat, Uscher & Russo
> 433 Hackensack Avenue, 2d Floor
> Hackensack NJ 07601
>
> Business Phone:  (201) 342-7100
> Business E-mail:  mquiat@uqur.com

> <u>*s/ Daniel M. Meier*</u>
> DANIEL M. MEIER (DM 2833)

Dated:    New York, New York
              April 11, 2012