**USCHER, QUIAT, USCHER & RUSSO, P.C.**
*By:* Michael E. Quiat, Esq.
433 Hackensack Avenue, 2nd Floor
Hackensack, NJ 07601
201-342-7100
Fax: 201-342-1810
mquiat@UQUR.com
*Attorneys for Plaintiff Stephen J. Topalian*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN J. TOPALIAN,<br><br>    Plaintiff<br><br>vs.<br><br>HARTFORD LIFE INSURANCE COMPANY,<br><br>    Defendant. | Civil Action No.: 10-1965 (KAM) (VVP)<br><br>**AFFIDAVIT OF MICHAEL E. QUIAT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**DOCUMENT ELECTRONICALLY FILED** |

STATE OF NEW JERSEY )
                     ) SS:
COUNTY OF BERGEN     )

MICHAEL E. QUIAT, being duly sworn, deposes and says:

1. I am an attorney at law admitted to the Bar of the United States District Court for the Eastern District of New York. I am sufficiently acquainted with the facts of the within matter to affirm as true and accurate the following statements.

2. Attached hereto at Exhibit A is a true and accurate copy of the Affidavit of Sandra Carter dated October 31, 2011. This document is a matter of public record. It was filed in

ERISA long term disability litigation against the Hartford currently pending in the United States District Court for the Middle District of Florida, captioned *Howard v. Hartford Life & Accident Insurance Company*, Civil Action No.: 3:10-cv-192-J-34TEM. The Affidavit of Sandra Carter is located at Docket Item No. 161, Attachment # 8 ("Exhibit 5"). Plaintiff respectfully requests that the Court take judicial notice of the Affidavit of Sandra Carter pursuant to R. 201, Fed. R. Ev.

I affirm that the within facts stated by me are true and accurate to the best of my knowledge. I understand that if any of the foregoing statements made by me are willfully untrue, I am subject to punishment.

**USCHER, QUIAT, USCHER & RUSSO**  
A Professional Corporation  
433 Hackensack Avenue, 2nd Floor  
Hackensack, NJ 07601  
Phone 201-342-7100  
Fax   201-342-1810  

By: _____  
MICHAEL E. QUIAT (MEQ-8238)  
Attorneys for Plaintiff, Stephen J. Topalian

Sworn and subscribed to before me

This 28th day of March, 2012

_Elizabeth C Nixon_

Elizabeth Constance Nixon  
Notary Public, New Jersey  
My Commission Expires 7-13-16

**EXHIBIT A**

## AFFIDAVIT OF SANDRA CARTER

PERSONALLY APPEARED before me, Sandra Carter, who being duly sworn and deposes and says:

1. My name is Sandra Carter and I worked for Hartford Life and Accident Insurance Company ("Hartford") from July 19, 2004 through July 22, 2011.

2. I worked in the disability claims department in Hartford's Georgia office from 2004 through 2006.

3. I also worked in the customer contact center from 2006 to 2011.

4. During my time in the claims department at Hartford, significant pressure was placed on me as an ability analyst to consistently increase claim determinations. There was more emphasis paid to meeting deadlines and coming to a claim decision rather than making accurate claim determinations.

5. During my time as an ability analyst, we were told to focus on and make claim recommendations based on whether certain information was provided. This included restrictions and limitations, exam findings, treatment plan, symptoms, and test results. There was little to no room for deviation in the type of information sought or considered for a claim recommendation. If the medical information clearly established that the claimant was disabled and the claimant's doctor inadvertently did not list the patient's treatment plan or one of the other Hartford requirements, this alone was a reason to deny the claim. The claimant's benefits would be withheld and the claimant would be told the reason for the denial and that they could supplement with the outstanding information, but the denial would trigger the administrative appeals process and the extensive deadlines and obligations placed on claimants that come with it. Moreover, even if the ability analyst recommended that the claim not be denied or a decision be suspended to allow the claimant to supplement the information, the clinical case manager could step in and recommend the denial of the claim. Likewise, the team leader could ultimately deny the claim regardless of the ability analyst's recommendation.

6. During my time in the claims department at Hartford, there was much more emphasis on making fast claim recommendations, than on claim accuracy. The pressure placed on ability analysts to make

1

timely claim decisions and the extensive caseload, made it extremely difficult to perform a thorough evaluation of each claim. Ability analysts often just have a cursory understanding of a claim and claims were often recommended for denial, because something like a treatment plan was missing or the doctor did not list exam findings, despite significant evidence of disability.

7. Likewise, where a clinical case manager reviewed the file and made a claim recommendation, I was taught to rely on the clinical case manager's opinion in rendering our claim recommendation.

8. While there is a written policy that states that ability analysts must factor in a claimant's subjective evidence, in reality we are taught to focus on objective evidence when making claim recommendations. Often a claim will be denied simply because the clinical case manager finds that there are not enough objective findings, despite significant and consistent subjective evidence of a disability and condition.

9. The pressure to turn files was not simply limited to the claims department. In the customer contact center, we were responsible for taking income calls and setting up new claims. We were limited to talking to all claimants (including new claimants) to 4 minutes and 45 seconds. It was virtually impossible to obtain the correct and necessary information to set up a new claim in this time period.

10. During my time in the claims department at Hartford, we often received emails setting forth the profitability of Hartford as a whole and separately of the group benefits department for the preceding quarter. In approximately March of each year, we would get a breakdown of Hartford's profitability for the preceding year, which would be followed up shortly with another email explaining whether we would be receiving a bonus and what percentage our bonus would be. We understood that bonuses were based on how profitable Hartford was. If Hartford was not profitable or there was a decrease in profitability, we knew our bonuses were at risk or would be reduced. Contrarily, if Hartford was more profitable, our bonuses would be the same or increased.

2

FURTHER AFFIANT SAYETH NAUGHT. _Sandra Carter_

SANDRA CARTER

The foregoing affidavit was acknowledged before me this __31__ day of __Oct.__ 2011, by SANDRA CARTER, who is personally known to me, or who has produced Georgia Driver's License No. __054998843__ as identification, and who did take an oath.

_____
NOTARY PUBLIC
PRINT NAME: T. Weghorst
☐ Personally known by me, or
☑ Produced Identification
Type of Identification: Ga DL

3-22-15
My Commission Expires:

3